FRED E. CROUSE, Administrator, Appellee, v. ED MACKEY et al., Appellants (and three other cases).

**HIGHWAYS:** Highway Improvement Act—Inequitable Assessment. The requirement of the Highway Improvement Act that, in assessing benefits, the lands shall be classified in a graduated scale of benefits by giving due consideration to the market value of the lands and to their relative location, proximity, and accessibility to the improvement, forbids:

1. A flat and uniform assessment, based only on market value, and applying alike to all lands in the district, wherever situated; or

2. A higher assessment on land which is remote from an assumed market center, but within the district, than on land less remote from said market center, on the *sole* theory that the owner of the more remote lands will use more of the improvement in going to and from such assumed market center than the less remote landowner. (Ch. 237, Sec. 14, 38 G. A.)

**HIGHWAYS:** Highway Improvement Act—Review by Court of Inequitable Assessment. Whether the court, on appeal from an assessment under the Highway Improvement Act, after finding that the assessment is illegal for want of proper classification of the lands, should remand the proceedings to the highway authorities, *quaere;* but a reduced assessment made by the court in accordance with the evidence on appeal must stand when the landowner does not complain, and when the power of the court to so reform the assessment was not questioned in the district or Supreme Court.

*Appeal from Boone District Court.*—G. D. THOMPSON, Judge.

DECEMBER 15, 1921.

IN the district court, four cases were consolidated for trial, and such consolidated case is now presented to us on appeal. Each case below presented an appeal from an order of the board of supervisors, assessing benefits for a graveled road upon the lands included in the district. The district court materially modified the order of the board of supervisors, and from such order of modification the board has appealed.—*Affirmed.*

W. W. *Goodykoontz,* for appellants.

D. G. *Baker* and *John A. Hull,* for appellees.

EVANS, C. J.—The proceedings before the board of supervisors were had under the provisions of Chapter 237 of the Acts of the Thirty-eighth General Assembly. A district was organized, for the purpose of improving ten miles of highway by graveling the same. Such highway extended from the city of Boone to Ridgeport, all within Boone County. The district was organized so as to create a zone one and one-half miles wide on each side of the improved highway, in the manner provided by Section 8 of the act above mentioned. Twenty-five per cent of the cost of the improvement was charged upon and apportioned among the 40-acre tracts included within such two zones. A board of apportionment was duly appointed, in accordance with the provisions of Section 14 of such act. The method of apportionment adopted by this board was that it appraised each 40-acre tract within the district at its fair market value. From the sum total of the market value of all the lands in the district, compared with the amount to be collected therefrom for the improvement, it determined the uniform millage necessary to be levied upon the value of each tract, in order to meet 25 per cent of the cost of the improvement. This millage was thus found to be 3.4. It thereupon apportioned against each 40-acre tract a rate of 3.4 mills on the dollar, upon the market value of each tract. This apportionment was accepted by the board of super-

1. HIGHWAYS:
Highway Improvement Act:
inequitable assessment.

visors by an order assessing the benefits accordingly. Each of the plaintiffs herein, having appeared before the board and filed their objections, appealed from such order. The trial court found that the assessments thus ordered by the board were illegal and excessive, and reduced the same materially in each case.

The main question to which argument is directed is: Did the board of apportionment comply substantially with the statute in the plan of apportionment adopted and in its method of computing the benefits to be assessed? The appellant contends for the affirmative on this question, and the appellees for the negative.

The attack upon the plan is predicated upon the fact that it failed to take any account of the alleged increased benefits accruing to the landowners most remote from the city of Boone; and that it failed to take account of the increased benefits accruing to the owners of lands abutting upon the improved highway.

From what has been already stated, it will be noted that the plan adopted was a flat and uniform assessment, based upon fair market value, and applying alike to all lands in the district, wherever situated. The road in question is included within the secondary class, as distinguished from the primary road. The plan of assessment of benefits applicable to primary roads is made applicable by the statute to the secondary roads. This is set forth in Section 14 of the act, as follows:

"Whenever the total expense of such improvement within said district has been approximately determined, said board of apportionment shall, with all reasonable dispatch, personally inspect and *classify* in some uniform manner, and under some intelligent description, and in *a graduated scale of benefits,* all real estate within said districts. Said *classification,* when finally established, shall remain as a basis for all future assessments to cover deficiencies, if any, unless the board of supervisors, for good cause, shall authorize a revision thereof. Said board of apportionment shall, among other relevant and material matters, if any, give due consideration to the *fair market value* per acre of each of the different tracts of real estate, to their relative *location and productivity,* and to their *relative proximity and accessibility to the said improvement.*"

It will be noted that the statutory plan calls for a classification by the board, and emphasizes five elements that are to be considered in such classification: "Value," "location," "productivity," "proximity," and "accessibility" to the improvement. These elements blend to some extent, and some of them approach the synonymous. The elements of productivity and, perhaps, location are, to a considerable extent, included in the consideration of value. "Location," "proximity," and "accessibility" to the improvement blend closely.

Did the plan of apportionment adopted by the board of apportionment "classify" the lands in the district, within the statutory requirement here set forth?

I. The first ground of attack upon this plan argued by the appellees is that the plan failed to take account of the increased benefits accruing to the respective owners of lands most remote from the city of Boone. The appellees all reside close to the city of Boone. It is their market town. Their theory is that a landowner who lives close to the city of Boone, even though he lives upon the highway, has occasion ordinarily to use only that small part of the highway which intervenes between his land and the city of Boone; and that, therefore, landowners who are more remote, and thereby receive the use of a longer sector of the highway, in going to and from Boone, should be charged with a greater benefit than the former. According to this theory, the landowner who lives the most remote from Boone should pay a proportionately higher rate of benefit than any intervening landowner.

We find nothing in the statute which makes such a theory obligatory upon the board. Nor does the theory itself impress us as sound in principle. If the highway under improvement were a mere spur or cul-de-sac, maintained for the purpose of ingress and egress in and out of Boone, such a theory might be applicable. But this is not the proper conception of the function of our highways. Our highways have no terminals. Their value to the landowner consists, not only in that they connect him with this town or with that one, but in that they connect him with the whole interminable system of highways, and thereby with *every* town. True, this highway has a value to the land-

owner in that it enables him to go to Boone. It likewise enables him to go to Ridgeport.

Section 3 of the act above quoted provides:

"The primary road system shall embrace those main market roads (not including roads within cities) *which connect all county-seat towns and cities and main market centers.*"

This is a definite declaration of the statutory purpose of the primary highway to connect *all* county-seat towns and main market centers. This being so, it would be clearly impracticable to select *one* market center and to predicate an increased benefit to a landowner upon his remoteness from such market center. This rule contended for by appellees, therefore, could not be legitimately applied to a primary road. If not to a primary road, then it could not be so applied to a secondary road; because, under the statute, the same method of classification is to be applied to a secondary road as is provided for a primary road. Though there is a distinction between primary and secondary roads in their general scheme of connection and extension, and though it is the primary road which connects the county seats and the market centers, and makes the main arteries of travel, yet the purpose of the secondary road is, nevertheless, to connect with the primary roads, and to become thereby a branch in the great system.

Granting, in the present case, that the principal present value of the highway improvement is to enable contiguous landowners to travel to Boone and to Ridgeport, and that Boone is the larger city, and to be regarded, therefore, as a main market center, the fact remains that no landowner is confined to one market center, and that farm products are usually hauled to the nearest railroad connection, be it large or small, and that the landowner most remote from Boone is most contiguous to Ridgeport, and for that very reason has the less occasion to travel to Boone. We make these observations only as illustrative of the impracticability of applying equitably such a rule as is contended for.

In further illustration, suppose that, by the joint action of the two counties, a district had been formed to establish a highway from Boone to Fort Dodge, should the landowner contiguous to Ridgeport be assessed more heavily because of his remote-

ness from Boone, and still more heavily because of his remoteness from Fort Dodge? Should the landowner contiguous to Boone be assessed more heavily because of his remoteness from Fort Dodge, and should the landowner contiguous to Fort Dodge be assessed more heavily because of his remoteness from Boone? Could the Ridgeport landowner say to the Boone landowner, "You should be assessed more heavily than I because you are more remote from Fort Dodge than I?" and could he say to the landowner from Fort Dodge, "You should be assessed more heavily than I because you are more remote from Boone than I?" In other words, every point on the highway is remote from somewhere thereon, and is likewise near to somewhere else. It is our conclusion that the "location," "proximity," and "accessibility" specified in the statute are to be construed as referring to the improvement as a whole, and not to an assumed terminal point or base or destination, either within or without the line of the highway.

II. This brings us to a consideration of the second ground of attack upon the adopted plan of apportionment, viz., that no account was taken of the proximity and accessibility of the lands to the improvement. We feel no hesitancy in saying that the adopted plan of apportionment wholly ignored this feature of the statute. Lands that were situated on the outer edge of each zone, one mile and a half distant from the improvement, some of them quite inaccessible to the improvement except by a circuitous route, were assessed at precisely the same rate upon their market value as were the lands abutting upon the highway. Some of these lands, because of their larger value, were assessed at a larger total than any of the lands abutting upon the improvement. The larger value upon which such assessment was made was not created by nor based upon the benefits of the improvement. That lands abutting upon a graveled highway receive a direct benefit by reason of their proximity and accessibility thereto, greater than lands of like quality and value more remote and more inaccessible, is too self-evident to tolerate argument. Such element cannot be ignored in any proper classification under the statute. Other elements being equal, such land so abutting would naturally fall into a class. The practical fact is, of course, that even such lands vary, as between

themselves, in other qualities, and should, therefore, carry different assessments, as between themselves. But this does not eliminate the special advantage to be charged to them by reason of such proximity. Nothing less than this could be equitable. There is nothing in the statute to forbid the graveling of other roads in the district running parallel to the improvement in question and a mile distant therefrom. In such a case, the landowners who are remote from the present improvement might be abutting owners as to the new improvement, and as such abutting owners should be charged with an increased benefit because of their proximity, and the landowners who abut upon the present improvement would be entitled to have their remoteness considered.

It is our conclusion that the method adopted by the board of apportionment, of simply making an appraisement of the market value of each tract and basing their apportionment thereupon, did not make a classification at all, and that an assessment based upon such apportionment was, to that extent, illegal. Such an apportionment necessarily resulted in an excessive assessment upon the remote lands. These plaintiffs are all owners of remote lands. The trial court properly held, therefore, that the assessment in each case was illegal and excessive.

Having so found, the court reduced the assessment against the lands of each of the plaintiffs in the first named three cases to the amount of $5.00 upon each 40-acre tract. This amounted to an average of about 12 per cent of the original assessments. In the last named case, the court reduced the assessment 50 per cent. It is argued by appellant that such reduction was unwarranted, upon the record.

2. HIGHWAYS: Highway Improvement Act: review by court of inequitable assessment.

Whether the court, having found the assessment illegal for want of classification, should have remanded the case to the board of supervisors for further procedure, is a question neither presented nor discussed. No request for such a remand was made in the trial court. Whether, having found the illegality, the court should have annulled the assessment entirely, and should have refrained from making any assessment against the plaintiffs, is also a question neither presented nor discussed. The plaintiffs have submitted to the assessments and are asking

affirmance. We have no occasion to consider, therefore, whether, upon the record, the trial court was justified in making a corrected assessment at all. Its power to make a corrected assessment in some amount was not challenged by either party. The respective amounts fixed upon by the court as an equitable assessment have support in the testimony of plaintiffs. In support of the assessments actually made, the defendants relied upon the statutory presumption in their favor, and offered no other evidence than that of the members of the apportionment committee. The testimony of these witnesses consisted of explaining the basis of their apportionment. That these witnesses acted with candor and in good faith, both as members of the committee and as witnesses, is undoubted. This did not cure the error in their conception of the statutory requirements. Their testimony, therefore, amounted to no more than to say that the values fixed by them on the different tracts of land were the fair, conservative market values thereof. Such testimony, though truthful, furnished the court no basis upon which to make a corrected assessment. The plaintiffs did introduce evidence tending to show that their respective assessments were inequitable and grossly excessive. This direct testimony was supported by a showing of remoteness of their lands from the line of the improvement. No alternative was left to the court but to base the corrected assessment upon such testimony. If the corrected assessments made by the court are not fairly supported by this evidence, it is because the evidence is insufficient to enable the court to fix upon the definite amount of any assessment at all. If such should be deemed to be the state of the record, only the plaintiffs could complain of the assessments thus made. It must be said, therefore, that the record discloses no prejudicial error against the defendants. The judgment of the lower court is, therefore, affirmed in each case.—*Affirmed.*

All the justices concur.